# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580,<br><br>                                   Petitioner,<br><br>v.<br><br>**MATCH GROUP, INC.,**<br>8750 N. Central Expy. Ste. 1400<br>Dallas, Texas 75231,<br><br>                                   Respondent. | Case: 1:22−mc−00054<br>Assigned To : Leon, Richard J.<br>Assign. Date : 5/26/2022<br>Description: Misc.<br><br>Misc. Case No.<br><br><br>**PETITION TO ENFORCE MATCH CIVIL INVESTIGATIVE DEMAND** |

Pursuant to 15 U.S.C. § 57b-1(e), the Federal Trade Commission ("Petitioner," "FTC" or "Commission") by its designated attorneys petitions this Court for an order requiring Match Group, Inc. ("Respondent" or "Match") to fully comply with a civil investigative demand ("CID") issued on March 19, 2020. The Commission issued the CID as part of a law enforcement investigation evaluating whether Match, including its subsidiaries and individual employees, has engaged in unfair and deceptive conduct in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and whether FTC action to obtain monetary relief would be in the public interest. The FTC is investigating OkCupid's involvement in a 2014 data-sharing incident with a facial recognition technology company, Clarifai, Inc. ("Clarifai"), as well as Match and OkCupid's public statements related to a 2019 New York Times ("NYTimes") story about OkCupid and Clarifai. Match produced some documents during the course of the FTC's investigation but has withheld nearly every responsive internal communication based on improper and overbroad assertions of attorney-client privilege and the work product doctrine.

Because the parties have been unable to resolve their disputes about Match's withholdings, the FTC asks the Court to require Match to produce all 53 documents withheld solely on the basis of work product and to produce 83 documents withheld on the basis of attorney-client privilege that are not described as communications seeking or rendering legal advice. In the alternative, the FTC asks the Court to conduct an *in camera* review of the 136 documents (or a subset it deems appropriate), and order Match to produce all non-protected, responsive information thereafter.

The FTC submits the following declaration and exhibits, which verify the allegations of the Petition and the accompanying memorandum of points and authorities:

| | |
|---|---|
| Exhibit 1: | May 26, 2022 Declaration of Sarah Choi; |
| Exhibit 2: | March 19, 2020 Match Civil Investigative Demand (CID), including Cover Letter, Specifications, and Resolution; |
| Exhibit 3: | May 27, 2020 Excerpts of Match Response to CID; |
| Exhibit 4: | July 13, 2019 New York Times Article, "Facial Recognition Tech is Growing Stronger, Thanks to Your Face"; |
| Exhibit 5: | September 2014 Email Correspondence produced by Match (C12081-83); |
| Exhibit 6: | July 2019 Email Correspondence produced by Match (C12213); |
| Exhibit 7: | July 2019 Email Correspondence produced by Match (C12214); |
| Exhibit 8: | July 2019 Slack Messages produced by Match (C13242-43); |
| Exhibit 9: | July 2019 Email Correspondence produced by Match (C12084-86); |
| Exhibit 10: | September 2020 and July 2019 Email Correspondence produced by Match (C12886); |
| Exhibit 11: | May 4, 2021 Excerpts of Sam Yagan Hearing Transcript; |
| Exhibit 12: | May 6, 2021 Excerpts of Melissa Hobley Hearing Transcript; |

Exhibit 13:    May 10, 2021 Excerpts of Justine Sacco Hearing Transcript;

Exhibit 14:    May 12, 2021 Excerpts of David (Quinn) McGee Hearing Transcript;

Exhibit 15:    May 19, 2021 Excerpts of Alice Hunsberger Hearing Transcript;

Exhibit 16:    June 2, 2021 Excerpts of Thomas Jacques Hearing Transcript (Vol. 1);

Exhibit 17:    August 20, 2020 Match First Privilege Log;

Exhibit 18:    September 24, 2021 Match Second Consolidated Privilege Log;

Exhibit 19:    September 24, 2021 Match Second Consolidated Privilege Log (Numbered and Highlighted Version);

Exhibit 20:    August 24, 2021 Index of Individuals Named in Match Privilege Logs;

Exhibit 21:    September 11, 2020 Letter from Sarah Choi (FTC) and Brian Shull (FTC) to Gerry Stegmaier (Match) and Mark Quist (Match);

Exhibit 22:    December 15, 2020 Letter from Mark Quist (Match) to Sarah Choi (FTC) and Brian Shull (FTC);

Exhibit 23:    November 2, 2021 Letter from Sarah Choi (FTC) and Brian Shull (FTC) to Gerry Stegmaier (Match) and Mark Quist (Match);

Exhibit 24:    April 8, 2022 Letter from Gerry Stegmaier (Match) and Edward Schwartz (Match) to Sarah Choi (FTC) and Liz Averill (FTC);

Exhibit 25:    May 4, 2022 Letter from Sarah Choi (FTC) and Liz Averill (FTC) to Gerry Stegmaier (Match) and Edward Schwartz (Match);

Exhibit 26:    May 10, 2022 Letter from Gerry Stegmaier (Match) and Edward Schwartz (Match) to Sarah Choi (FTC) and Liz Averill (FTC); and

Exhibit 27:    May 26, 2022 Letter from Sarah Choi (FTC) and Liz Averill (FTC) to Gerry Stegmaier (Match) and Edward Schwartz (Match).

## PETITION ALLEGATIONS

In support of its Petition, the FTC alleges the following:

### The Parties

1.      The FTC is an administrative agency of the United States government, organized and existing pursuant to FTC Act, 15 U.S.C. § 41, *et seq*. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts and practices in or affecting commerce.

2.      Section 6 of the FTC Act, 15 U.S.C. § 46, authorizes the FTC to investigate the business and conduct of any person, partnership or corporation engaged in or whose business affects commerce (with certain exceptions not relevant here). Section 20 of the FTC Act, 15 U.S.C § 57b-1, empowers the Commission to issue CIDs to gather documents and information relevant to unfair or deceptive acts or practices in or affecting commerce.

3.      Match is a Delaware corporation and a leading provider of online dating services. It is engaged in, and its business affects, "commerce," as that term is defined in Section 4 of the FTC Act, 15 U.S.C. § 44. Match's headquarters is in Dallas, Texas. In 2011, Match acquired OKCupid. *See IAC's Match.com Acquires OkCupid*, PRNewswire (Feb. 2, 2011), https://www.prnewswire.com/news-releases/iacs-matchcom-acquires-okcupid-115090674.html.

### Jurisdiction and Venue

4.      This Court has jurisdiction to enforce the Commission's duly issued CIDs, including the CID issued to Match. 15 U.S.C. §§ 57b-1(e), (h); 28 U.S.C. §§ 1331, 1345.

5.      Section 20(e) of the FTC Act, 15 U.S.C. § 57b-1(e) provides that:

>  Whenever any person fails to comply with any civil investigative demand duly served upon him under this section, or whenever . . . such person refuses to surrender such material, the Commission…may file, in the district court of the United States for any

judicial district in which such person resides, is found, or transacts business, and serve upon such person, a petition for an order of such court for the enforcement of this section.

6.      Venue is proper in this judicial district under Section 20(e) of the FTC Act, 15 U.S.C. § 57b-1(e), because Match transacts business here. 15 U.S.C. §§ 57b-1(e), 28 U.S.C. § 1391.

## The FTC's Investigation and Civil Investigative Demand

7.      On July 13, 2019, the NYTimes published an article reporting that Clarifai had built a face database to train its facial recognition technology using images it obtained from OkCupid. Ex. 3 (NYTimes Article). As reported in the article, OkCupid stated that Clarifai contacted it in 2014 "about collaborating to determine if they could build unbiased A.I. and facial recognition technology" but OkCupid "did not enter into any commercial agreement then and have no relationship with them now." *Id*. at 4; *see also* Ex. 5.

8.      The Commission subsequently obtained information indicating that Clarifai had, in fact, obtained photos and other user data from OkCupid. Ex. 1 (Choi Decl.) at ¶ 3.

9.      On March 19, 2020, the Commission issued a CID to Match pursuant to its March 14, 2019 Resolution Directing Use of Compulsory Process in Nonpublic Investigations of Acts and Practices Related to Consumer Privacy and/or Data Security ("Resolution No. 1823036"). The purpose of the CID was

> [t]o determine whether unnamed persons, partnerships, corporations, or others are engaged in, or may have engaged in, deceptive or unfair acts or practices related to consumer privacy and/or data security, including but not limited to the collection, acquisition, use, disclosure, security, storage, retention, or disposition of consumer information, in or affecting commerce, in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended.

Ex. 2 (Match CID) at 3, 19.

10. The CID required Match to produce certain information and documents by April 20, 2020. *Id*. at 3. Specifically, the CID requires Match to produce, among other things, all documents and communications "(both internal and with outside parties) related to the sharing of OkCupid user data with Maxwell Krohn and Clarafai" and "related to the investigation conducted by the Company and any other activities that the Company undertook in response to the New York Times article published on July 13, 2019 . . . including, but not limited to, Documents concerning the facts, analyses, and conclusions of the investigation or assessments conducted," as well as "[a]ll consumer inquiries or complaints from any source, and the Company's internal communications relating to those consumer inquiries and complaints, concerning the Company's sharing of OkCupid user data with Maxwell Krohn and Clarifai." *Id*. at 12 (Doc. Request Nos. 5, 6, 8).

11. The CID defines the "Company" to mean "Match Group, Inc., its parent(s), wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, brands, and affiliates, and all directors, officers, members, employees, agents, consultants, and other persons working for or on behalf of the foregoing." *Id*. at 13. OkCupid and Humor Rainbow fall within this definition of "Company."

### Service of the CID

12. The CID was served by the Commission's Acting Secretary on Match's General Counsel in accordance with all statutory requirements and the Commission's Rules. *See* Ex. 1 (Choi Decl.) at ¶ 5; 15 U.S.C. § 57b-1(c); 16 C.F.R. § 2.7 (2001).

### CID Responses and Efforts to Resolve Privilege Disputes

13. Match requested extensions of its CID production deadline, and the FTC accommodated all of Match's requested extensions. Ex. 1 (Choi Decl.) at ¶ 7. Pursuant to the

agreed-to rolling production schedule, Match was required to produce all responsive documents and information by May 27, 2020. *Id*.

14. On May 27, 2020, Match produced some documents responsive to the CID but withheld all internal communications pertaining to the facts at issue. *Id*. at ¶ 10.

15. On August 5, 2020, Commission staff sent a letter to Match's counsel identifying significant deficiencies in Match's CID responses. *Id*. at ¶ 12. Staff noted that documents related to OkCupid's sharing of user data with Clarifai, as well as documents related to the investigation Match and OkCupid personnel conducted in response to the NYTimes inquiry, were missing from Match's production. *Id*. Further, Match produced no internal communications related to consumer complaints concerning the data-sharing with Clarifai. *Id*. (The following year, on May 27, 2021, Match produced 6 responsive documents, including 5 documents related to CID Doc. Request No. 8. *Id*. at ¶¶ 21-23.) Commission staff also reiterated their request that Match produce a privilege log if Match was withholding responsive documents it determined were protected. *Id*. at ¶ 12.

16. Match produced a privilege log on August 20, 2020, followed by several supplemental logs following negotiations with Commission staff about various issues with Match's privilege logs. *Id*. at ¶ 13, 24-29; Ex. 17 (Aug. 20, 2020 Match Privilege Log) (initial log). On September 24, 2021, Match produced its final privilege log. Ex. 18 (Sept. 24, 2021 Match Privilege Log) (version of second consolidated privilege log produced by Match); Ex. 19 (Numbered Sept. 24, 2021 Match Privilege Log) (version wherein FTC added a column to identify the entries from 1 to 271 and highlighted challenged entries in yellow and blue for reference). As reflected in its final log, Match has withheld 262 responsive internal communications on grounds that they are protected by the attorney-client privilege and/or the

work product doctrine. *Id*. (Match redacted 7 additional documents to protect user privacy and 2 documents it claimed included "Non-Responsive, Sensitive Business Information.")

17. Counsel for the parties have discussed Match's assertions of attorney-client privilege and work product on numerous occasions, including in telephone conferences on August 21, 2020, December 3, 2020, December 10, 2021, and April 28, 2022, during the investigational hearings conducted in the matter, as well as through written correspondence. *See, e.g.*, Ex. 1 (Choi Decl.) at ¶¶ 14-15, 17-20; 24-39; Ex. 21 (Sept. 11, 2020 FTC Letter), Ex. 22 (Dec. 15, 2020 Match Letter); Ex. 23 (Nov. 2, 2021 FTC Letter); Ex. 25 (May 4, 2022 FTC Letter); Ex. 26 (May 10, 2022 Match Letter); Ex. 27 (May 26, 2022 FTC Letter). Attempts to resolve the parties' disputes regarding the propriety of Match's attorney-client privilege and work product claims were unsuccessful. Ex. 1 (Choi Decl.) at ¶¶ 39-41.

18. Match's assertions of the attorney-client privilege and work product doctrine are overbroad. The facts and the law do not support Match's blanket and sweeping application of attorney-client privilege and work product over the internal communications responsive to the FTC's 2019 CID.

19. With respect to work product, Match has withheld documents that were not created in anticipation of litigation but rather were created for business reasons. Those business documents involve communications related to responding to a press inquiry, managing public relations issues, and handling customer inquiries. And because the withheld communications would have taken place notwithstanding purported litigation concerns, work product protection is unavailable. Significantly, 53 documents that Match has identified as work product are between non-attorneys, including 15 communications that appear to have taken place before a single attorney was brought into the matter. *See* Ex. 19 (Numbered Match Privilege Log), Docs. 1-15.

20. With respect to attorney-client privilege, Match's assertions warrant scrutiny because of its wholesale application of the privilege, the absence of redactions to distinguish between protected and nonprotected information, and the fact that the descriptions in the privilege log and the surrounding context of the communications do not support that the communications were for the purpose of obtaining or providing legal advice. Based on these concerns, the FTC is specifically challenging Match's withholding of 83 documents designated as attorney-client privilege listed on Match's final log with descriptions that do not sufficiently identify the documents as being related to the seeking or rendering of legal advice. (Match also claims that 64 of those 83 documents are work product, and the FTC is challenging the propriety of withholding on that basis.)

### Commission's Substantial Need for the Withheld Information Outweighs Match's Claims of Work Product

21. Even if the Court finds Match's claims of work product are valid, the Commission is entitled to fact work product because of its substantial need for the documents and because it cannot obtain the information otherwise without undue hardship.

22. When Match refused to produce all responsive internal communications based on the attorney-client privilege and work product doctrine, Commission staff attempted to obtain information about Match and OkCupid's internal investigation, the basis of the OkCupid statement issued to the NYTimes, and the handling of responses to customer inquiries about Clarifai by taking several investigational hearings. Ex. 1 (Choi Decl.) at ¶¶ 19-20. The six hearings took place in May 2021 and June 2021. *Id*. at ¶ 20. Due to the witnesses' inability to recall basic information related to the facts at issue, Commission staff were unable to obtain the information they needed to complete their investigation. *Id*.

23. Without Match's internal communications and without reliable witness testimony, the FTC is left with Match's interrogatory responses to evaluate what took place within Match and OkCupid during the 2019 and 2020 time period. But the FTC should not be subject to relying only on Match's interrogatory responses, especially when those responses may be inconsistent with other discovery or where OkCupid's past interrogatory responses appear to have omitted pertinent information. *See id*. at ¶¶ 8-9. The FTC must have the opportunity to review the information contained in the contemporaneous documents that Match has withheld to evaluate whether Match has violated the law.

24. Match's withholding of responsive documents has burdened the FTC's investigation, forced the FTC to expend additional public resources, and hindered the FTC's assessment of whether Match's and OkCupid's conduct related to the handling of the NYTimes inquiry and subsequent consumer responses violate Sections 5 and 19 of the FTC Act, and whether the FTC should seek relief for consumers. *Id.* at ¶ 41.

25. The CID directed to Match is within the Commission's statutory authority, the information sought is reasonably relevant to the FTC's investigation, and the demands are definite and not unduly burdensome. Further delay in the FTC's investigation caused by Match's failure to fully comply with the CID based on its unsupported privilege and work product claims is contrary to the public interest. Therefore, the FTC's CID should be enforced in full by requiring Match to produce responsive documents it has improperly withheld.

26. No previous application for the relief sought herein has been made to this Court or any other. *Id*. at ¶ 42.

**PRAYER FOR RELIEF**

WHEREFORE, the FTC invokes the aid of this Court and prays:

1. For the immediate issuance of an order directing Respondent to show cause why it should not comply in full with the CID by producing the documents identified in the September 24, 2021 Second Consolidated Privilege Log;

2. For the immediate issuance of an order directing Respondent to produce all 53 documents that it has withheld solely on the basis of the work product doctrine;[1] and

3. For the immediate issuance of an order directing Respondent to produce 83 documents that it has withheld on the basis of attorney-client privilege that are not described as communications seeking or rendering legal advice or are attachments with no independent justification of privilege (which include 64 documents that were also withheld on the basis of the work product doctrine);[2] or

4. In the alternative, for the Court to conduct an *in camera* review of the 136 documents (or a subset it deems appropriate), and for the issuance of an order directing Respondent to produce all non-privileged, responsive information thereafter; and

5. For other such relief as this Court deems just and proper.

---

[1] S*ee* Ex. 26 (Numbered Match Privilege Log) (challenged work product documents highlighted in yellow), Docs. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 18, 21, 32, 39, 48, 49, 50, 51, 52, 57, 67, 73, 78, 87, 89, 91, 96, 97, 100, 101, 104, 105, 106, 107, 108, 117, 121, 155, 156, 165, 169, 170, 185, 196, 197, 198, 209, 210.

[2] *See id*. (challenged attorney-client privilege documents highlighted in blue), Docs. 16, 17, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 31, 41, 42, 43, 44, 46, 53, 54, 55, 60, 72, 75, 103, 111, 113, 115, 116, 142, 145, 150, 162, 167, 171, 175, 181, 184, 186, 189, 191, 193, 195, 206, 207, 208, 220, 225, 227, 228, 229, 231, 232, 236, 237, 238, 239, 240, 244, 241, 242, 243, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 257, 258, 259, 260, 263, 265, 266, 267, 268, 270.

Dated: May 26, 2022

Respectfully submitted,

ANISHA S. DASGUPTA
General Counsel

MICHELE ARINGTON
Assistant General Counsel for Litigation

*s/ Sarah Choi*
SARAH CHOI (D.C. Bar. No. 977025)
ELIZABETH AVERILL (D.C. Bar No. 491216)

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.,
Mail Stop CC-8232
Washington, D.C. 20580
Tel: 202-326-3157 (Arington); 202-326-2212 (Choi); 202-326-2993 (Averill)

*Attorneys for Petitioner*