UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **FEDERAL TRADE COMMISSION,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Misc. Case No. 22-54 (RJL) |
| | ) | |
| **MATCH GROUP, INC.,** | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

June 20, 2025 [Dkt. #1, Dkt. #48]

The Federal Trade Commission ("FTC" or "petitioner") filed a petition to enforce a March 2020 civil investigative demand that it served on Match Group, Inc. ("Match" or "respondent"). The petition seeks the production of documents Match withheld for attorney-client privilege and work product protection. Judge Harvey issued a Report and Recommendation, recommending that the Court grant in part and deny in part the petition. Match then filed its objections. Upon consideration of the Report and Recommendation, the parties' briefing, and the applicable case law, the Court **ADOPTS** the Report and Recommendation [Dkt. #46] and **GRANTS IN PART** and **DENIES IN PART** the FTC's petition [Dkt. #1]. The Court also **GRANTS IN PART** and **DENIES IN PART** Match's Motion to Seal [Dkt. #48] that accompanies its objections.

## BACKGROUND

On July 13, 2019, the New York Times published an article suggesting that the founders of OkCupid (a dating website owned by respondent) allowed Clarifai, a start-up company that was developing facial recognition technology, to access and use images of people's faces from the dating website to help build its facial recognition technology. Petition to Enforce Match Civil Investigative Demand ("Pet.") [Dkt. #1], Ex. 4 ("NYT Article") [Dkt. #36-5] at 2, 4. Prior its publication, a New York Times reporter sent an email to OkCupid's Global Chief Marketing Officer, warning him of the story's upcoming release. Pet., Ex. 6 [Dkt. #36-7]. That email sparked a flurry of internal communications at Match—the parent company of OkCupid. See Report and Recommendation ("R & R") [Dkt. #46] at 7.

Soon after the New York Times published the article, OkCupid began receiving inquiries and complaints from users. Pet., Exs. 9 [Dkt. #36-10], 10 [Dkt. #36-11]; Decl. of Jared Sine ("Sine Decl.") [Dkt. #17-2] ¶ 8. These inquiries and complaints, coupled with Match's "legal-investigative efforts" into the article, led to additional internal communications. See id. ¶ 7. Subsequently, the legal department sent a cease-and-desist letter to Clarifai, demanding that it "cease and desist any and all access to the OkCupid services and systems," "from all attempts to create any profiles on any of those services," and "destroy any user-profile images copied from any of its services, along with derivative works created from them" because Clarifai's "collection and use of images from OkCupid violate[d] the OkCupid Terms of Use." Resp. Mot. For Leave to File Under Seal ("2022

Mot. to Seal") [Dkt. #17], Ex. 4 [Dkt. #17-7] at 2; *see* Sine Decl. ¶ 7; Supp. Decl. of Mark Quist ("Quist Supp. Decl.") [Dkt. #17-3] ¶ 2.

In 2020, the FTC notified Match that it was investigating whether OkCupid's data sharing with Clarifai and public statements in response the New York Times article violated the Federal Trade Commission Act's prohibition on unfair or deceptive acts. *See* Pet. at 1. After quarreling for more than two years over the production of documents, the FTC filed this action on May 26, 2022 to enforce an administrative subpoena, seeking the production of 136 documents that Match has withheld on the basis of attorney-client privilege or work product protection. *See generally id.* The Court referred this case to Magistrate Judge Michael Harvey to "hear and determine all motions and matters in this case" except for the petition, for which I ordered an R & R. Min. Order (August 4, 2022). Subsequently, the parties narrowed their dispute to 64 full documents and proposed redactions of allegedly non-responsive material in 4 other documents. *See* R & R at 2. Judge Harvey resolved various disputes among the parties and conducted an *in camera* review of the documents. *See id.* He then issued the R & R on March 12, 2024. *See generally id.*

Match filed its objections to the R & R within 14 days, *see* Resp. Objs. to R & R ("Resp. Objs.") [Dkt. #47], along with a Motion For Leave to File Under Seal, *see* Mot. to Seal [Dkt. #48]. The FTC filed its response to Match's objections, *see* Pet. Resp. to Resp. Objs. ("Pet. Resp.") [Dkt. #49], and Match filed its reply, *see* Resp. Rely in Supp. of Objs. ("Resp. Reply") [Dkt. #50]. Match's objections are now ripe for review.

## LEGAL STANDARD

The Court reviews *de novo* objections to, or adoption of, a magistrate judge's R & R. *Means v. District of Columbia*, 999 F. Supp. 2d 128, 132 (D.D.C. 2013); Fed. R. Civ. P. 72(b)(3); LCvR 72.3(c). In ruling on objections, the Court may "accept, reject, or modify, in whole or in part" a magistrate judge's recommendations. 28 U.S.C. § 636(b)(1)(C).

## ANALYSIS

### I. Report and Recommendation

Match represents that "Magistrate Judge Harvey's thorough R&R reflects a careful application of the law to the facts before him." Resp. Objs. at 1. It objects, however, to four parts of the Report and Recommendation. *Id.* All Match's objections lack merit.

#### A. Match's Objections to the Magistrate Judge's Factfinding

The first two objections are easily resolved. *First*, the Magistrate Judge included in the R & R that OkCupid employees "provided Clarifai with [ ] user-posted data, estimated to comprise a couple million images." R & R at 5. Match objects, arguing that this factual issue is not before the Court, nor is the Magistrate Judge's factual finding correct. Resp. Objs. at 3. The Court finds that the Magistrate Judge committed no error in providing factual background to the privilege disputes, and the evidence in the record supports his factual finding. *See* 2022 Mot. to Seal, Ex. 2 [Dkt. #17-5] at 32; *id.*, Pet., Ex. 5 [Dkt. #36-6] at 2; *see also Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339, 342 (N.D. Ill. 2021).

*Second*, the Magistrate Judge refused to consider Match's *ex parte* submissions—specifically, slip sheets with attorney-written summaries that accompanied Match's

4

documents for *in camera* review. *See* R & R at 52 n.36. The Magistrate Judge explained that Match had not satisfactorily explained why these submissions were appropriate, nor why the Magistrate Judge should allow Match to submit new evidence after the conclusion of briefing. *See id.* Match asserts that the Magistrate Judge "unnecessarily constrained his ability to rule on the merits of Match's privilege and work product claims and prejudiced Match's ability to defend itself" because he refused to consider these *ex parte* submissions. Resp. Objs. at 4–6. Match now urges the Court to consider these attorney summaries along with its objections. *Id.* at 6. This objection is puzzling considering Match's representation that the Magistrate Judge's "thorough" R & R was "a careful application of the law to the facts before him." *See* Resp. Objs. at 1.

To be sure, the Magistrate Judge did not err in refusing to consider these unauthorized submissions. Match cannot establish that privilege applies by "unsworn averments of its counsel." *See FTC v. Boehringer Ingelheim Pharm., Inc.*, 180 F. Sup. 3d 1, 20 (D.D.C. 2016), *aff'd*, 892 F.3d 1264 (D.C. Cir. 2018). Therefore, the Court will not consider Match's "explanatory submissions in support of its withholding of [the] documents that remain in dispute." *See* Resp. Reply at 14.

**B.    Match's Work Product Doctrine Objections**

The Magistrate Judge recommends that Match produce 37 documents that it withheld under the work product doctrine. R & R at 35–55. Match objects, arguing that the Magistrate Judge erred in finding that twelve documents did not fall within the work

product doctrine. Resp. Obj. at 7–11.[1] According to Match, after the New York Times inquiry, Match reasonably anticipated litigation, and the authors of the disputed document were only involved because of that anticipation. *Id.* at 7. Match further contends that the Magistrate Judge relied on inapposite cases and erred in finding that Documents 14 and 18 did not sufficiently reflect Match's anticipation of litigation, even though they explicitly mention it. *Id.* at 9–10. I disagree.

In assessing if the proponent of the work product doctrine has carried its burden to show that a document is protected, the Court evaluates whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010) (emphasis added) (citation omitted). Anticipation of litigation does not need to be the "primary motivating purpose" behind a document's creation. *Id.* at 136–38. But "[w]here a document would have been created 'in substantially similar form' regardless of the litigation," it fails that test, and thus "work product protection is not available." *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting *Deloitte*, 610 F.3d at 138).

With respect to Document 14, litigation was not reasonably anticipated when it was created. *See* R & R at 37–40. Match wrongly criticizes the Magistrate Judge's conclusion that Chief Legal Officer Jared Sine's declaration "subverts the notion that litigation was sufficiently anticipated" at that time because of its "legal investigations policy." Resp.

---

[1] Match argues that Documents 14, 18, 21, 39, 50–52, 67, 73, 78, 87, and 117 are protected by the work product doctrine. Resp. Objs. at 8.

Objs. at 10 (quoting R & R at 38). "[T]he degree to which counsel is involved in creating the document bears directly on whether the document was prepared in anticipation of litigation." *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 134 (D.D.C. 2012). Sine confirms that in-house attorneys were not involved at time Document 14 (an email) was written. Sine Decl. ¶ 5. Based on the Court's *in camera* review, Document 14 merely suggests that the legal department might need to be involved, but it does not indicate that the authors were anticipating litigation.

In any case, Match failed to show that Documents 14, 18, 21, 39, 50–52, 67, 73, 78, 87, and 117, or substantially similar documents, would not have been created in the ordinary course of business irrespective of litigation. The New York Times inquiry prompted Match to investigate the veracity of the reporter's claims and craft a response to the reporter's request for comment. *See* Pet., Ex. 12, Hearing Tr. of Melissa Hobley ("Hobley Tr.") [Dkt. #36-13] at 151:15–152:13; Pet., Ex. 13, Hearing Tr. of Justine Sacco ("Sacco Tr.") [Dkt. #36-14] at 84:9–25, 85:7–17, 100:4–15, 124:18–25, 135:19–136:5. Match was motivated, in part, by correcting inaccurate information due to concerns about the story's impact on the brand. *See* Hobley Tr. at 151:15–152:13. Moreover, Match concedes that it would have responded to the New York Times in the ordinary course of business. *See* Resp. Reply at 12. Only one of these communications (Document 117) occur after the publication of the article, and—as the Magistrate Judge explained—there is scant evidence that it would not have been made in substantially similar form in the absence of potential litigation. *See* R & R at 52.

Match's argument that the senders and recipients of these communications would not be the same in the absence of a reasonable anticipation of litigation and the legal investigations policy is unpersuasive. *See* Resp. Objs. at 9; Resp. Reply at 12. Match's Chief Communications Officer Justine Sacco testified that her "team gets involved when [they] support the brands when topics come in that are related to corporate and legal matters," that is, "anything related to legal, privacy business, financials, and earning." Sacco Tr. at 36:24–37:11. Therefore, these documents are not protected by the work product doctrine. *See Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 72 (D.D.C. 2017) ("[N]ot all documents generated from an internal investigation are protected by the work[-]product doctrine simply because an organizations' internal investigation coexists with a present or anticipated lawsuit. Documents that would have been created in the ordinary course of business irrespective of litigation are not protected by the work[-]product doctrine." (quoting *In re Veiga*, 746 F.Supp.2d 27, 34 (D.D.C. 2010)).

The Court's *in camera* review confirms that these documents are not protected by the work product doctrine. None of the documents are authored by attorneys, and all but one document (Document 18) focuses on gathering facts, crafting a response to the inquiry from the New York Times, and discussing the article after it published. As to Document 18, it is farfetched for Match to assert that it "expressly" shows that Match anticipated "specific litigation." *See* Resp. Objs. at 10. It merely makes reference to "perhaps" needing a cease-and-desist letter.

Finally, the Magistrate Judge recommends the Court find that the FTC demonstrated substantial need and undue hard for certain documents over which Match has claimed work

8

product protection. R & R at 55–60.[2] Specifically, the Magistrate Judge found that the FTC had made a particularized showing that OkCupid's co-founder Sam Yagan and Chief Marketing Officer Melissa Hobley could not recall the events during the period subject to the investigation. *Id.* at 56–57. The Magistrate Judge explained that the communications at issue "have a unique value apart from those already in the movant's possession" because: (i) they reflect the conduct of the witnesses; (ii) Match produced only a handful of the documents that were international communications; and (iii) Match's interrogatory response "reveals little about the investigation." *Id.* at 58–59 (quoting *Boehringer Ingelheim*, 778 F.3d at 155). Match objects and argues that gaps in witnesses' recollection do not demonstrate substantial need and that the FTC could have obtained the information by other means. Resp. Objs. at 11–14.

An adverse party may discover work product "if 'the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means,' so long as counsel's 'impressions, conclusions, opinions, or legal theories' are not disclosed." *Boehringer Ingelheim*, 778 F.3d at 149 (quoting Fed. R. Civ. P. 26(b)(3)(A)–(B)). The party seeking discovery, however, bears the burden of demonstrating "substantial need" and "undue hardship." *Id.* at 155 (quoting Fed. R. Civ. P. 26(b)(3)). The moving party generally meets this burden by "demonstrat[ing] that the materials are relevant to the case, the materials have a unique value apart from those already in the movant's possession, and 'special circumstances'

---

[2] Match objects to the entirety of the Magistrate Judge's substantial need and undue hardship finding, even though it is only seeking to withhold Documents 14, 18, 21, 39, 50–52, 67, 73, 78, 87, and 117, which are not protected by the work product doctrine. *See* Resp. Objs. at 11 n.6.

excuse the movant's failure to obtain the requested materials itself." *Id.* Those "special circumstances" include instances "where a witness had a lapse of memory." *Id.* at 155–56.

The FTC has shown that there is a substantial need and due hardship for the communications of Yagan and Hobley. Match has not argued that the information is irrelevant. Indeed, it cannot. Match has produced few documents to illuminate on the details of what occurred, and these witnesses recalled little about their conversations during the internal investigation, the facts they learned, and how they handled customer inquiries. Thus, the Magistrate Judge correctly found that these contemporaneous communications have unique value apart from those already in the FTC's possession, as they provide unique information about the deception and unfairness claims under the FTC Act. *See* R & R at 58. Although Match asserts that the FTC could obtain this information through other discovery methods, none of these arguments are persuasive. There is no exhaustion requirement in Rule 26(b)(3)(A), and even so, Match itself recognizes the extensive efforts to which the FTC has attempted to obtain this information. *See* Resp. Objs. at 12 (FTC held fifty-five hours of investigational hearings).

Match's reliance on *United States Equal Emp. Opportunity Comm'n v. George Washington Univ.* ("*GW II*"), 342 F.R.D. 161 (D.D.C. 2022) is misplaced. In *GW II*, the documents at issue were internal interview notes. 342 F.R.D. at 183–84. The United States Equal Employment Opportunity Commission ("EEOC") had already deposed the witnesses who were the subject of the interview notes at issue, but the EEOC argued undue hardship because those witnesses had been instructed not to answer deposition questions about the internal investigation on the ground of work product protection. *Id.* at 184. The

Magistrate Judge rejected this argument because "the Commission [was] effectively arguing that the mere fact that material is work product—and the party that created it protects it as such—creates an undue burden sufficient to overcome work product protection. That cannot be the law." *Id.* The Magistrate Judge, therefore, did not address substantial need. *See id.* at 183–84. Here, by contrast, Yagan and Hobley had "lapse[s] of memory," which are among the "special circumstances" that our Circuit recognizes for failure of a litigant to obtain the substantial equivalent of the documents he seeks. *See Boehringer Ingelheim*, 778 F.3d at 155–56.

## II.  Motion to Seal

Match filed a motion to seal Exhibits 1 and 12 to its objections. *See generally* Mot. to Seal. These exhibits are two of the *ex parte* slip sheets. The FTC does not take a position on the merits of the motion but does not object to sealing. *Id.* at 1. Exhibit 1 merely contains outside counsel's interpretation of Document 14, which the Court has found is not protected by the work product doctrine. Exhibit 12, however, references Document 41, which Match asserts is protected by attorney-client privilege. The FTC no longer disputes that Document 41 is privileged. Since there is no protected information in Exhibit 1, the Court denies Match's request to seal it, but I grant Match's request to seal Exhibit 12 because the parties do not dispute that it is protected by attorney-client privilege.

## CONCLUSION

For the reasons stated above, the Court **ADOPT** Magistrate Judge Harvey's Report and Recommendation, and **GRANTS IN PART** and **DENIES IN PART** the FTC's

Petition to Enforce Match Civil Investigative Demand. The Court also **GRANTS IN PART** and **DENIES IN PART** Match's Motion to Seal.

*[signature]*
RICHARD J. LEON
United States District Judge